IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

SUSAN M. JONES,

        Plaintiff,

Vs.

                                                No. 12-2652-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Susan m. Jones' ("Jones") applications for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and supplemental security income benefits under Title XVI of the Act. Jones initially alleged an onset date of July 1, 2004, (R. 125), but at the hearing, she amended this date to August 14, 2008, which is after the administrative law judge's ("ALJ") decision on her prior application. (R. 26). After a hearing on the claimant's current applications, the ALJ filed his decision on November 23, 2010, finding the following severe impairments: fibromyalgia syndrome, possible chronic fatigue syndrome, one seizure, and depression/anxiety. The ALJ's conclusion was that Jones was not disabled as she had the residual functional capacity ("RFC") to perform some unskilled work at the light-exertion level. The Appeals Council

denied Jones' request for review, so the ALJ's decision stands as the Commissioner's final decision. (R. 1-3). With the administrative record (Dk. 3) and the parties' briefs on file pursuant to D. Kan. Rule 83.7.1 (Dks. 9, 16, ad 17), the case is ripe for review and decision.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id*. Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ found that Jones had not engaged in substantial gainful activity from August 14, 2008, her amended onset date. At step two, the ALJ found the claimant to have the following severe impairments: "fibromyalgia syndrome, possible chronic fatigue syndrome, one seizure and depression/anxiety." (R. 14). The ALJ next determined that the medical records did not meet the criteria for the applicable listings and that there were no specific listings covering fibromyalgia and chronic fatigue syndrome. (R. 15).

Before moving to steps four and five, the ALJ determined that Jones has the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), including the ability to lift and/or carry 10 pounds frequently and 20 pounds occasionally and stand, walk, and/or sit for 6 hours in an 8 hour workday. The claimant can do occasional postural, but cannot climb ladders, ropes or scaffolds or be around hazards, such as dangerous machinery and unprotected heights. Due to her mental impairments, the claimant cannot have contact with the general public or perform detailed work or instructions, but she can have occasional contact with co-workers.

(R. 16). At step four, the ALJ accepted the vocational expert's testimony that this RFC left Jones unable to perform her past relevant work as an appraiser, salesperson, child-care worker and office worker. At step five, the vocational expert provided testimony from which the ALJ concluded that, "the clamant is capable of making a successful adjustment to other work that exists in

significant numbers in the national economy," such as the unskilled light occupations of housekeeper, laundry sorter and optical goods assembler. (R. 20). A decision of "not disabled" was filed.

**ERROR IN WEIGHING OPINION OF TREATING MENTAL SOURCES**

In this circuit, it is well settled that "the opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (internal quotation marks and citations omitted). A treating physician's opinion is entitled to such weight due to the unique perspective afforded in the treating relationship "that cannot be obtained from the objective medical findings alone." *Id*. As a general matter, the greatest weight is given to the treating physician's opinion with less to the examining physician and even less to an agency physician. *Id*. An ALJ is not to "pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson*, 366 F.3d at 1083. The same holds true as between different medical reports. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

The ALJ's evaluation of a treating physician's opinion follows a sequential analysis:

> First, the ALJ must decide whether the opinion is entitled to controlling weight. For this, she "must first consider whether the opinion is

> well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id*. [ *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir.2003] ) at 1300 (internal quotation marks omitted). If it is not, then the opinion is not entitled to controlling weight. If it is, then the ALJ must further determine whether the opinion is "consistent with other substantial evidence in the record." *Id*. We have held that an ALJ must make a finding as to whether the physician's opinion is entitled to controlling weight "so that we can properly review the ALJ's determination on appeal." *Id*.

*Jones v. Colvin*, 2013 WL 1777333, at *3 (10th Cir. 2013). Should the treating physician's opinion not be given controlling weight, the ALJ then must specify what lesser weight is assigned the treating physician opinion. *Robinson v. Barnhart*, 366 F.3d at 1083. Even if not entitled to controlling weight, the treating source opinion is still entitled to deference and is to be weighed using all of the following factors:

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
> (3) the degree to which the physician's opinion is supported by relevant evidence;
> (4) consistency between the opinion and the record as a whole;
> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
> (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–1301 (10th Cir.2003). After considering the above factors, the ALJ must give good reasons for the weight ultimately assigned to the opinion. If the ALJ rejects the opinion completely, then specific, legitimate reasons for doing so must be provided. *Watkins*, 350

F.3d at 1301.

The ALJ noted that Jones was being "treated at Johnson County Mental Health Center for depression and anxiety" and had been "assessed with Global Assessments of Functioning of 50." (R. 15). The ALJ also mentioned the claimant's therapist by name, Sherry Martin-McCaughtry, D.O. (R. 15). The evidence of record includes Dr. Martin-McCaughtry's progress notes from November of 2009 through June of 2010. On all the visits, the physician also described Jones' mood, affect, thought content, and insight/judgment. (R. 1196, 1199, 1205, 1273). On all visits, the first axis was "depression nos" and "anxiety nos," and on the June 2010 visit the physician added "r/o somatoform d/o vs. malingering for financial gain." *Id.* On the GAF assessment in axis five, the physician on every visit scored it "50." *Id.* From the physician's progress notes, the ALJ selected only to mention Dr. Martin-McCaughtry's comments that Jones "was only focused on perceived physical complaints" and had come to one session with "yet another obscure research study and theory into the origins of chronic fatigue." (R. 15). The ALJ also quoted the note by Dr. Martin-McCaughtry "to rule out somatoform disorder versus malingering for financial gain." *Id.* As far as making any comments specifically directed at the opinions of this treating medical source, the ALJ's decision is limited to this sentence: "Further, little weight is given to the GAFs of 50 by her treating mental source, because progress notes do not indicate that the claimant's

8

symptoms are more than mild to moderate in severity." (R. 18).

The plaintiff first challenges the ALJ's finding that Dr. Martin-McCaughtry's GAF assessment1 of 50 is entitled to "little weight" based on the progress notes indicating only mild to moderate symptoms. (R.18). There is not substantial evidence of record to sustain the ALJ's reading of the progress notes. Dr. Martin-McCaughtry's recorded progress notes repeatedly reflect "limited eye contact," "desperate tone" to her speech, "terrible" mood, "dramatic" effect, preoccupied with somatic complaints, and "poor" insight and judgment. (R. 1196, 1199, 1205, 1273). There is nothing in that terminology that suggests only mild to moderate symptoms. *See, e.g.*, *Boucher v. Astrue*, 371 Fed. Appx. 917, 921 (10th Cir. 2010) (GAF score did not match description of patient during appointment). When the ALJ fails to explain or identify any

---

1 "A GAF score of fifty or less, however, does suggest an inability to keep a job." *Nguyen v. Astrue*, 2010 WL 2628641 at *6 n.7 (D. Kan. 2010). GAF scores between 41–50 indicate, "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Clark v. Astrue*, 2012 WL 4856996 at *10 (D. Kan. 2012) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV–TR) 34 (4th ed. text revision 2000). The Tenth Circuit has framed the weight of such evidence within this context:
> Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. *Eden v. Barnhart*, 109 Fed. Appx. 311, 314 (10th Cir. 2004) (unpublished). The claimant's impairment, for example, might lie solely within the social, rather than the occupational, sphere. A GAF score of fifty or less, however, does suggest an inability to keep a job. *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) (unpublished).

*Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) (unpublished).

claimed inconsistencies between the opinions of the treating medical provider and the treatment notes of the medical providers, the ALJ's reason for rejecting that opinion are not sufficiently specific for review. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Furthermore, as the court next discusses, there are no obvious inconsistencies between this medical source opinion and the progress notes and other medical evidence.

      The progress notes establish the continued use of prescribed medications for the treatment of these symptoms. The court rejects the Commissioner's argument that Dr. Martin-McCaughtry's comments about Jones' preoccupation with somatic complaints and her note to rule out somatoform disorder or malingering provides a reasonably sufficient basis for construing these progress notes as only evidencing mild or moderate symptoms.2 The ALJ makes no mention of the therapist's notes during this same time period which showed impairment assessments as being either moderate or serious. (Dk. 1201, 1203, 1275, 1277). The ALJ did reference from the Johnson County Mental Health Center, Dr. K. Singh, the earlier supervising therapist, for having completed in February 2009 a Medical

---

2 "[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (citations omitted). Speculation over a physician's conscientious evaluation and treatment of a patient is hardly substantial evidence of mild to moderate symptoms.

10

Questionnaire. (R. 15). Dr. Singh's evaluation includes a diagnosis of depressive disorder and adjustment disorder with a fair prognosis. (R. 943). Dr. Singh opined that Jones could work part-time with a flexible work schedule and that she should avoid work environments that were "fast paced, high stress, [and] physically demanding." (R. 944). The ALJ's decision does not cite any evidence indicating that Dr. Singh's findings are inconsistent with the opinions later expressed by Dr. Martin-McCaughtry, both of whom treated claimant for mental health issues.

After this finding on the GAF score, the ALJ's decision includes this statement: "In addition, the assessments by the State agency physician and psychologist are given some weight, as they are generally consistent with the overall record, test results and her daily activities." (R. 18). The plaintiff contends the ALJ erred in giving these opinions from non-examining, non-treating state agency physicians. The plaintiff notes that the opinions of these state agency physicians were given more than a year before the ALJ's decision, were offered without considering the later opinions of Dr. Martin-McCaughtry and her treatment notes, and were provided on check-box forms with little explanation in support of the opinions. The plaintiff's arguments are well taken that the evidence of record certainly offers little to support the ALJ's finding to give more weight to the consulting, non-examining physician than the mental health treating physicians. As for the ALJ's opinion

11

that the mental symptoms are only mild or moderate due to the lack of emergency room visits or hospitalizations, the ALJ cites no medical evidence to support his own opinion that such treatment is necessary to indicate severe symptoms when someone is also receiving ongoing individual therapy. *See Daniels v. Astrue*, 2011 WL 6372866 at *4-*5 (D. Kan. 2011).

The record shows that in late 2008 and into 2009, Jones was treated at the Mercy & Truth Medical Missions. Dr. Simon did a consultation on November 3, 2008, and found 11 of 18 fibromyalgia trigger points that day. (R. 794). The diagnostic assessment included, "Depression, Anxiety, Insomnia, probable fibromyalgia, Myalgias/arthralgias, PM hypotension." *Id*. A prescription of Lyrica was started for the fibromyalgia. In December of 2008, Dr. Simon's notes show that Jones was "very fatigued but sleeping worse at night than usual." (R. 795). The assessment this month included "Fibromyalgia and CFS." *Id*. Dr. Simon increased the prescription for Lyrica. In January of 2009, Jones was seen by Dr. Simon's nurse practitioner who recorded that Jones would be sending over a limitations form required for her participation in vocational rehabilitation. (R. 796). The nurse practitioner included in the assessment: "Fibromyalgia (multiple tender and tense muscle groups.)" *Id*. In February of 2009, Dr. Simon saw Jones who complained of weight gain with the Lyrica but less aches. Jones noted that she was "[s]till very fatigued." (R. 797). Dr. Simon's assessment reads in part: "Fibromyalgia (multiple tender

12

and tense muscle groups)" and "Chronic Fatigue." *Id.* The prescription for Lyrica was decreased. Dr. Simon noted they were still waiting on the Vocational Rehabilitation form. In March of 2009, Dr. Simon records problems with low blood pressure and fainting but that pain was tolerable based on the combination of Lyrica, Aleve and Tylenol. (R. 1126). The assessment included: "Fibromyalgia (multiple tender and tense muscle groups)" and "Chronic Fatigue." *Id.*

The ALJ mentions Dr. Simon for having a completed a Medical Questionnaire for Vocational Rehabilitation Services. (R. 15). The ALJ wrote that "Dr. Simon indicated that the claimant would need to be able to change positions between sitting, walking and standing, but could not be around extreme temperatures or chemicals, climb and lift more than 10 pounds" and "that the claimant could work low stress part-time work with a flexible schedule." (R. 15). On the questionnaire, Dr. Simon listed the diagnosed conditions as "fibromyalgia, anxiety, depression, insomnia, hypotension, chronic fatigue, irritable bowel syndrome, anthralgias," with a prognosis that these are "chronic diseases that wax and wane." (R. 941). The ALJ's evaluation of Dr. Simon's opinion evidence is limited to the following combined discussion of all medical opinion evidence:

> As for the opinion evidence, the undersigned gives controlling weight to the opinions of the treating sources, who indicate that there is nothing to explain her symptoms, because these are consistent with progress notes and numerous negative tests of record. However, little weight is given to

13

> the treating source opinions that the claimant is unable to work full time due to her symptoms, because this is inconsistent with conservative treatment of record, negative test results, and her daily living activities, including her ability to raise her children. These opinions appear to be based entirely on subjective complaints and not any objective testing.

(R. 18).

The plaintiff argues that the ALJ's reasons for discounting Dr. Simon's opinion, and that of Dr. Singh's, are not rooted in substantial evidence. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (italics in original)). "What the court condemned in *Langley* was that the ALJ had "no legal nor evidentiary basis for" his finding that the physician's opinion was "based only on claimant's subjective complaints." *Cook v. Astrue*, 554 F. Supp. 2d 1241, 1247 (D. Kan. 2008) (quoting *Langley*, 373 F.3d at 1121). The plaintiff contends the ALJ is simply speculating that Dr. Simon's conclusion is based only on subjective complaints, and this speculation ignores the evidence of record and fails to recognize that subjective complaints can be an appropriate diagnostic tool.

As summarized above, Dr. Simon diagnosed fibromyalgia after

finding 11 of 18 fibromyalgia trigger points. This court and others recognize that "the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity." *Gregory v. Colvin*, 2013 WL 5390019, at *3-*4 (D. Kan. 2013) (citing in part *Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir.2010)(noting that no objective medical tests reveal the presence of fibromyalgia); *Gilbert v. Astrue*, 231 Fed. Appx. 778, 783–784 (10th Cir. Apr. 11, 2007)(the lack of objective test findings noted by the ALJ is not determinative of the severity of fibromyalgia); *Priest v. Barnhart*, 302 F. Supp. 2d 1205, 1213 (D. Kan. 2004); *Glenn v. Apfel*, 102 F. Supp. 2d 1252, 1258 (D. Kan. 2000). Diagnosed by ruling out other diseases, fibromyalgia or its potential for being a disabling condition is not ruled out by the absence of an objective medical test. *Priest*, 302 F. Supp. 2d at 1213. Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms. *Brown v. Barnhart*, 182 Fed. Appx. 771, 773 n. 1 (10th Cir. May 25, 2006). The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia. *Gilbert*, 231 Fed. Appx. at 783; *Brown*, 182 Fed. Appx. at 773 n. 1; *Glenn*, 102 F.Supp.2d at 1259. "As this court has previously indicated, it is error for the ALJ to discount plaintiff's allegations of limitations due to fibromyalgia because of the lack of objective medical evidence." *Gregory v. Colvin*, 2013 WL 5390019, at *4 (citing *Burgess v. Colvin*, Case No. 12–1258–SAC (D. Kan. Aug. 21, 2013; Doc. 17 at 9); *Gibbs*

*v. Colvin*, Case No. 11–1318–SAC (D. Kan. March 6, 2013; Doc. 30 at 6–9); *Walden v. Astrue*, Case No. 11–4120–SAC (D. Kan. Aug. 28, 2012; Doc. 15 at 15–16)). The ALJ improperly discounted the opinion of Dr. Simon and her diagnosis of fibromyalgia as based on subjective complaints and not objective testing.

Other reasons apparently listed by the ALJ for giving little weight to Dr. Simon's assessment were "conservative treatment record, negative test results, and her daily living activities including the ability to raise her children." (R. 18). Just saying the treatment is conservative or just saying there are negative test results does not constitute medical evidence. First, the ALJ's cursory treatment of the Dr. Simon's opinion does not convince or satisfy the court that the ALJ considered all the relevant factors that must be considered when determining what weight should be accorded the medical opinions of treatment providers. *See Andersen v. Astrue*, 319 Fed. Appx. 712, 721–723, 727 (10th Cir. April 3, 2009). Second, there is no medical evidence of record to sustain the ALJ's own opinion that treatment of Jones' fibromyalgia and chronic fatigue syndrome was conservative and indicative of only mild to moderate symptoms. An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

From its review of the record, the court has found medical evidence from referrals with negative testing results for other possible causes for her pain and fatigue. With respect to the fibromyalgia, the ALJ did write when assessing the claimant's credibility, "[e]ven some doctors have noted that she did not have appropriate tenderness at trigger points for fibromyalgia, which is the basis for establishing the diagnosis of fibromyalgia (Exhibit B38F)." (R. 17). In that exhibit, the court found only one medical source report consistent with the ALJ's statement. It was prepared by Dr. Khan in April of 2010 after a single consulting examination by referral. He wrote: "At this time, I cannot pinpoint one pain generator as the main source of her discomfort. I believe, she does have a generalized migratory pattern of myofascial discomfort, may be borderline fibromyalgia, although she does not have very many positive tender points today." (R. 1208). During that same period, the claimant was seen several times by other treating physicians who reported positive system reviews for myalgias and included assessments for fibromyalgia. (R. 1218, September 28, 2010; R. 1210, April 29, 2010). Dr. Khan's report from a single consulting exam is cautiously worded to emphasize the plaintiff's condition on a particular day. This is hardly substantial evidence of contrary "negative test results" that undermine Dr. Simon's diagnosis and her ongoing treatment of Jones for fibromyalgia and her evaluation of Jones' limitations.

Finally, the court does not find substantial evidence to sustain an inconsistency between the treating physicians' opinions and Jones' "daily living activities, including her ability to raise her children." (R. 18). It is proper for an ALJ to consider ADLs when evaluating credibility, *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004), but minimal ADLs do not constitute "substantial evidence that a claimant does not suffer disabling pain," *Id*. at 1221 (quotation omitted). The evidence on Jones' ADLs is "much more nuanced than the ALJ's summary suggests." *Wells v. Colvin*, 727 F.3d 1061, 1070 (10th Cir. 2013). At the time of the hearing, Jones was living with her 15-year-old son who she describes as self-sufficient taking care of his own laundry and preparing his own breakfast. On her "good days," Jones described her household chores as washing dishes "once or twice a week," preparing "a dinner maybe once a week," doing her own laundry "about once every four to six weeks," and sweeping "the kitchen floor a couple times a month." (R. 36). She reported receiving help with the household chores from her mother and sister when she was not feeling well. (R. 155). Jones described that on "good days" she did these household chores for "maybe 1-2 hours with frequent rest breaks." (R. 218). Her mother's third-party statement confirms that "on good days" Jones could do light cleaning, laundry and landscaping work. (R. 195). This evidence of daily living activities is not inconsistent with the opinions of Dr. Simon or Singh on Jones being capable of part-time employment with a flexible work

18

schedule.

As fully discussed and outlined above, the ALJ's reasons for according weight and evaluating the opinions of the treating physicians' and the non-examining, non-treating State agency physicians are not supported by substantial evidence of record. There is little of record to assure the court that the ALJ looked to all the relevant factors and considered all the medical evidence in evaluating these medical opinions. The ALJ's cursory grouping of reasons for discounting these opinions lacks the specificity to sustain a substantial evidence review. The case must be reversed for further proceedings. On remand, the ALJ should take the opportunity to address the medical and vocational evidence regarding the plaintiff's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis pursuant to SSR 96-8p.

IT IS THEREFORE ORDERED that the decision of the Commissioner is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 11th day of February, 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge